**In Re: Nomination Petition of Frank E. Elliott as Candidate for the Democratic Nomination for the Office of United States Senator. Objection of William J. Green.**

Heard March 2, 1976, by Judge KRAMER.

*Gregory M. Harvey*, for petitioner.

*William M. Gross*, with him *Edgar R. Casper* and *James McDonough*, for respondent.

MEMORANDUM OPINION BY JUDGE KRAMER, March 15, 1976:

This matter comes before this Court under the provisions of the Pennsylvania Election Code.[1] It was instituted by William J. Green through the filing of a Petition to Set Aside the Nomination Petition of

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §2600 et seq.

Frank E. Elliott for the 1976 primary election for the Democratic nomination for the office of United States Senator. Green is a candidate for the same office. Green's petition was timely filed and the requisite service was properly made. As provided by an Order of the President Judge of this Court, a hearing on this matter commenced on March 2, 1976, and concluded on March 8, 1976, after four full days of hearing. Voluminous evidence and testimony were received from both parties.

Because of the great number (1,143) of objections to signatures, of which some 554 involved alleged forgeries, and the speed with which the statute requires such cases to be heard and concluded, the trial Judge, after the hearing and during his deliberation adopted certain principles or guidelines in reaching a final determination:

1. All signatures to which no objection was made or for which no evidence, or less than substantial evidence, was presented by Green were deemed to be valid signatures.

2. All signatures on all forms for each county to which Green, on the record or in his petition, conceded or withdrew his objections, were deemed to be valid signatures, i.e., the counties of Bucks, Beaver, Lackawanna, Luzerne, Susquehanna, Tioga and Washington.

3. All signatures on Form 23 for Monroe County, to which Elliott conceded as having less than the required 100 signatures, were deemed to be invalid.

4. During the hearing witnesses and counsel, at times, used different terminology than that which was used in the various categories of objections as set forth in the petition, and the evidence discloses that some signatures were invalid under more than one objection category. In an attempt to make the findings understandable, to reduce possible confusion, and for convenience, the trial Judge placed each signature found

to be invalid in only one category (rather than to repeat or duplicate it in two or more categories). In any event, care was taken to assure (a) that each signature found to be invalid was objected to, (b) that the allegation of the objection was supported by substantial evidence, and (c) that each invalid signature was placed in one appropriate category of objection, as shown in the Appendix.

5. Where there was doubt whether there was adequate evidence to support an allegation of objection to a signature, such doubt was resolved in favor of the validity of the signature. Where the nomination petition signature did not include a middle initial, or a marital prefix or a parental or child suffix, the doubt was resolved, absent specific evidence to the contrary, in favor of validity. Upon evidence of a minor or close, but wrong, number in an address, each was resolved in favor of validity, but a greater error in address was resolved in favor of invalidity in the absence of any evidence to the contrary.

6. For all signatures, except one (Form 35, line 55), where a person testified to his signature on the nomination petition as genuine (they all presented an affidavit to that effect for the purpose of amendment), the signature has been found to be valid and deemed to be so amended. It should be noted (once again) that those counties conceded or withdrawn by the parties were not considered for the purpose of this paragraph.

7. It was stipulated that all signatures to which Green did not object, or which he conceded as valid or withdrew his objection thereto, were deemed to be valid signatures without the need for an amendment.

Having heard all of the testimony presented, the undersigned trial Judge, after carefully considering the appearance, demeanor and credibility of the witnesses, makes the following findings of fact:

1. Elliott timely presented to the Secretary of the Commonwealth a Nomination Petition purporting to nominate himself as a candidate for the Democratic nomination for the office of United States Senator in the Democratic Primary Election to be held April 27, 1976. Elliott's petition consisted of 35 Forms[2] purporting to represent the signatures of more than 100 registered and enrolled members of the Democratic Party in each of 17 counties of Pennsylvania.

2. The Elliott Nomination Petition contained a total of 2,433 signatures on the 35 Forms for the 17 counties. Green objected to 1,143 signatures.

3. Green did not object to any of the signatures in three counties, i.e., Bucks County (Forms 1, 2, 3 and 4, containing a total of 123 signatures); Susquehanna County (Forms 25, 26 and 27, containing a total of 216 signatures); and Tioga County (Forms 28, 29 and 30, containing a total of 181 signatures).

4. During the course of the hearings Green conceded or withdrew his objections to four additional counties, viz., Beaver County (Forms 10, 11 and 12, containing a total of 173 signatures); Lackawanna County (Forms 16, 17 and 18, containing a total of 174 signatures); Luzerne County (Form 19, containing a total of 117 signatures); and Washington County (Forms 31 and 32, containing a total of 136 signatures).

5. During the course of the hearing Elliott conceded that he did not have the required 100 signatures for Monroe County (Form 23).

---

[2] Although the Election Code speaks of a "nomination petition" containing one or more "sheets", the "pages" of which will be numbered, the parties, with the consent of the hearing Judge, throughout the hearings referred to the sheets of the nomination petition as "Forms" and identified the signatures in question by a line number of a Form, which is identified by a number at the top right of the first page of each Form.

6. Green's petition specifically defined nine categories of objections as follows:

"A. The phrase *'not registered'* refers to each signature or purported signature which is not the signature of an elector registered and enrolled at the address affixed to such signature in the nomination petition and which signature is not similar to the name of any person shown in the records of the registration commission of the appropriate County to be a registered and enrolled elector of said County and each of which signatures is therefore averred to the the [sic] signature of a person who is not registered and enrolled within the meaning of the Election Code and hence not eligible to sign a nomination petition;

"B. The phrase *'registered in another party'* refers to each signature of an elector enrolled in the Republican Party or registered as 'Independent' or 'Non-partisan' and each of which signatures is therefore averred to be the signature of a person who is not eligible to sign a nomination petition for a candidate for the Democratic nomination for office of United States Senator;

"C. The phrase *'illegible'* refers to signatures which are not sufficiently legible as to be capable of identification and hence cannot be associated with the signatures and/or addresses of persons registered and enrolled as members of the Democratic Party within the appropriate County and which signatures therefore cannot be counted as genuine signatures in respect of a nomination petition for the Democratic nomination for United States Senator;

"D. The phrase *'duplicate'* refers to signatures of the same registered and enrolled elector which have been affixed twice to the nomination petition and which are in each such case the duplicate signature of the same person and which signatures can be counted only once as genuine signatures;

"E. The phrase *'previously signed another petition'* refers to signatures of persons who signed another nomination petition for the same office, to wit, the Democratic Nomination for United States Senator, and which other nomination petition has been filed and not withdrawn, and which signatures shall be counted in order of their priority of date, pursuant to Section 977 of the Election Code, 25 P.S. §2937, and hence cannot be counted as genuine signatures in respect of the nomination petition of Frank E. Elliott;

"F. The phrase *'signed by another'* refers to signatures which were not signed or written by the registered and enrolled elector of the same name stated in the nomination petition and which signatures are not lawful or genuine signatures for purposes of a nomination petition and cannot lawfully be counted among the signatures constituting the number necessary for nomination of a candidate;

"G. The phrase *'different signature'* refers to each signature or purported signature which is not the signature of an elector registered and enrolled at the address affixed to such signature in the nomination petition but which signature bears some similarity to the name of an elector registered and enrolled at such address, so that by such evidence as might establish that the signature on the nomination petition was actually signed by the registered and enrolled elector having a similar name, an amendment to the nomination petition might be allowed to cause the signature on the nomination petition to correspond with the name of an elector registered and enrolled as a member of the Democratic Party, so that such signature might then be counted as a genuine signature;

"H. The phrase *'different address'* refers to each signature or purported signature which appears to be the signature of an elector registered and enrolled in the appropriate county, but at an address which is dif-

ferent from the address affixed to such signature in the nomination petition, so that by such evidence as might establish that the elector continues to have his or her residence at the address stated in the records of the registration commission, pursuant to the requirements of the Election Code, including §703 and 704, 25 P.S. §2813-14, an amendment to the nomination petition might be allowed to cause the address on the nomination petition to correspond with the address of such elector as shown in the records of the registration commission, so that such signature might then be counted as a genuine signature;

"I. The phrase *'wrong date'* refers to each signature or purported signature to which is affixed on the nomination petition a date which is outside the three-week period for circulation of nomination petitions, to wit, January 27, 1976 through February 17, 1976, or to which no date whatsoever has been affixed, so that such signature cannot lawfully be counted as a genuine signature. . . ."

7. Nine counties remained at issue at the end of the hearing. The Forms of eight of those counties do not contain the requisite signatures in support of the nomination petition. The Forms of one county do contain sufficient signatures.

8. The trial Judge's specific findings on each of the contested signatures on each of the forms for the respective nine counties still contested are set forth in the Appendix attached to this Memorandum Opinion. The Appendix consists of nine pages, with the respective county and the category of the objection noted thereon. The categories of the objections are the same as the lettered categories used by Green in his petition, as set forth in Finding 6 above, and lettered "A" through "I". The entire Appendix, including the findings pertaining to the circulators' af-

fidavits as noted on the applicable Appendix sheets, is made a part of these findings by reference thereto.

9. The following is a summary of the findings applicable to all 17 counties:

| County | Form No. | Total Signatures | Found To Be Invalid | Valid Signatures Balance |
|---|---|---|---|---|
| 1. Bucks* | 1-2-3-4 | 123 | 0 | 123 |
| 2. Beaver* | 10-11-12 | 173 | 0 | 173 |
| 3. Lackawanna* | 16-17-18 | 174 | 0 | 174 |
| 4. Luzerne* | 19 | 117 | 0 | 117 |
| 5. Susquehanna* | 25-26-27 | 216 | 0 | 216 |
| 6. Tioga* | 28-29-30 | 181 | 0 | 181 |
| 7. Washington* | 31-32 | 136 | 0 | 136 |
| 8. Westmoreland | 35 | 125 | 23 | 102 |
| 9. Monroe** | 23 | 105 | 105 | 0 |
| 10. Dauphin | 5-6-7 | 160 | 100 | 60 |
| 11. Columbia | 8 | 120 | 24 | 96 |
| 12. Clinton | 9 | 125 | 87 | 38 |
| 13. Allegheny | 13-14-15 | 184 | 91 | 93 |
| 14. Lycoming | 20-21-22 | 121 | 35 | 86 |
| 15. Montour | 24 | 125 | 49 | 76 |
| 16. Wayne | 33 | 125 | 125 | 0 |
| 17. Wyoming | 34 | 123 | 42 | 81 |

## DISCUSSION

This case has presented a difficult and time-consuming task for the Court. Because of the time schedules provided by the Election Code, the usual time allotted to preparation by counsel was reduced to a small fraction of the norm. Witnesses were subpoenaed from many distant counties to bring voter registration records. These records were gathered in a hurried fashion, and, as a result, second and third trips to the hearing were necessary for some witnesses. Because of the time limitations, counsel stipulated

* Conceded by Green
** Conceded by Elliott

many facts they would ordinarily contest. It is important to note, however, that neither party requested additional time, and that both parties were given a more than adequate opportunity to present their cases. The President Judge directed the trial Judge to give this case priority over any other Court work. The time limitations involved made it necessary for court personnel to work late into the night. Considering these less than satisfactory, and sometimes confusing circumstances, the trial Judge must commend counsel, the parties, and all persons involved, for their cooperation in bringing this matter to a speedy conclusion. At the time of this writing the transcript of testimony has not been prepared and, as is usual in election cases, the hearing Judge has been forced to rely upon copious notes made during the hearing.

Green presented Charles A. Appel, Jr., Esq. as his handwriting expert. Elliott presented Thomas Cole Whitcomb as his handwriting expert. These experts were highly qualified, both by training and experience. Both experts generally used the same approach, techniques and methods in making their respective handwriting analyses. They compared the questioned signatures in the nomination petition with the respective permanent voters' registration cards (25 P.S. §951-17). In addition, Whitcomb compared several additional affidavits made shortly before or during the hearings. They both agreed that (among other things) different writing positions, writing materials, qualities of ink, supporting writing surfaces, health and mental attitudes, and occupations, all create variations in the signing of one's name at different times. The main difference between the testimony of these two experts was that Appel believes that, in spite of the possible variations which may be brought about by the factors mentioned above, the handwriting of a mature writer contains certain identifiable features

which remain constant during the individual's life. Appel testified that these features permit him to reach a conclusion whether a signature on one document was written by the person who signed another document, even when there has been a significant time lapse between the signatures. Appel made hundreds of handwriting comparisons in this case and testified that hundreds of signatures were written by persons other than the persons who signed the respective permanent registration cards. Whitcomb was much more conservative. He testified that, in his opinion, a mature writer's handwriting may continue to change and evolve as the individual ages, and that, therefore, it is not possible to reach a firm conclusion concerning the validity of a signature when the only signature available for comparison was written perhaps years before the signature in question. Whitcomb testified that he could reach a conclusion on only four signatures, (out of the approximately 180 he examined). Of these four, one was valid and three were written by persons other than the persons who signed the permanent registration cards. Whitcomb testified that he could reach no conclusion on any other signature which he examined in this case. Whitcomb was requested to examine signatures only on certain Forms (*i.e.,* Forms 8, 10, 13, 14, 15, 31, 32, 33, 34 and 35). In other words, he was not asked to examine (and he did not examine) any of the signatures on the forms for Dauphin County (Forms 5, 6 and 7), Clinton County (Form 9), Lycoming County (Forms 20, 21 and 22), Montour County (Form 24), or Monroe County (Form 23). Whitcomb offered no testimony specifically related to the signatures of any of the circulators' affidavits in question. Both witnesses explained in great detail the reasons for their conclusions or nonconclusions. Both expert witnesses were forthright and believable. It is important to note, however, that of

the four signatures on which Whitcomb reached conclusions, he agreed with Appel.[3] This acknowledgement by Whitcomb lends support to the Court's reliance upon the expert testimony of Appel. The trial Judge considered all of the testimony and evidence and individually compared every contested signature with every permanent registration card submitted in reaching his findings. The record in this case supports the findings of the Court because every signature which the trial Judge has found to be an invalid signature because of forgery was testified to by Appel as a forgery, and none of Appel's testimony was either shaken on cross-examination or contradicted by Whitcomb, or anyone else. The only exception to this statement is that the trial Judge accepted the pertinent testimony and affidavits of all those persons who testified or presented affidavits verifying their respective signatures on the petitions as disclosed by Respondent's Exhibits Nos. 4, 6, 8, 9, 10, 13, 14 and 15. All eight of the signatures proven by these exhibits were accepted and found by the trial Judge to be valid.

In passing the Court must note its distress over the casual, sloppy and indifferent manner in which nomination petitions are prepared and signed by our citizens. Nomination petitions are basic to the entire representative form of government upon which all of us must rely for the protection of our rights and the establishment of our responsibilities. As happens all too often in these cases, evidence is received indicating that nomination petitions are circulated and distributed in an irresponsible manner. Petitions are left unattended in drinking establishments and cir-

---

[3] Whitcomb agreed with Appel that the signature on Form 13, line 103 was valid, and that the signatures on Form 15, line 28; Form 33, line 84; and Form 33, line 109 were forgeries.

culated by people unknown to the person who signs the circulation affidavit. The affiants at times lose all contact with the nomination petitions and the affiants have no knowledge of who signs the petitions or how the signatures are obtained. Even an untrained eye can easily perceive that in many instances a nomination petition is signed several times by the same person. Husbands sign for wives, parents for their children, etc. without any authority. If the election process, including primaries, is to be truly reflective of the desires and intentions of our citizens, much more care must be given to the preparation of nomination petitions.

Green objected to five circulators' affidavits. He has conceded, however, that one of them (Lackawanna County Form 17) was valid. Elliott presented the testimony of the circulator for Westmoreland County Form 35, who verified his signature and explained the absence of the notary's date, seal and signature. Elliott offered an amended circulator's affidavit. The hearing Judge has accepted the amendment and has found the affidavit to be valid. *See Martin Nomination Petition*, 435 Pa. 446, 257 A.2d 247 (1969).

With regard to the circulator's affidavit for Allegheny County, Form 15, Green alleged that the circulator "Gloria Perkins" was not a registered and enrolled elector and, therefore, was not eligible to circulate the petition.[4] Green proved that the only name similar to "Gloria Perkins" registered in the permanent voters' registration cards in Allegheny County was a "Gail Olivia Perkins," registered at 6937 Thomas Boulevard in the City of Pittsburgh, rather than at Morgan, Pennsylvania (some 15 miles from Pittsburgh). In response to that, Elliott presented the testimony of Stanley S. Goorin, who was

---

[4] *See* Section 909 of the Election Code, 25 P.S. §2869.

the circulator of Forms 13 and 14. Goorin testified that he handed Form No. 15 to a Gloria Perkins, his housekeeper, so that she could obtain signatures. He testified that he personally saw about ten persons sign that petition (containing a total of 47 signatures). Elliott offered to substitute a new circulator's affidavit made by Mr. Goorin to replace the circulator's affidavit of Gloria Perkins. This substitution is not acceptable. Section 977 of the Election Code, 25 P.S. §2937, states that the Court, in its discretion, may permit amendments for "material errors or defects" which are "apparent on the face of the nomination petition."[5] Here there is no material defect or error apparent on the face of the petition. If Gloria Perkins had been qualified to circulate this petition, her circulation affidavit would be apparently proper. We are well aware that our Supreme Court, in a case dealing with a circulator's affidavit, has stated that "[a]n individual's right to seek public office should not be defeated by such technicalities." *Martin, supra,* 435 Pa. at 449, 257 A.2d at 248. But in making that admonition, the Court relied upon *Socialist Labor Case,* 332 Pa. 78, 1 A.2d 831 (1938) and *Frank Petition,* 173 Pa. Superior Ct. 400, 98 A.2d 255 (1953). In those two latter cases, the appellate courts of this state held that the affiant of a circulator's petition must have some knowledge of the facts as stated in the circulator's affidavit. The affiant must have some personal knowledge as to the requirements of the act. The record in this case discloses that Goorin did not have knowledge of the circulation of Form 15 except for

---

[5] Webster's Third New International Dictionary (1971) defines "apparent" as follows: "1: capable of easy perception: as *a*: readily perceptible to the senses, esp. sight: open to ready observation or full view: unobstructed and unconcealed . . . *b*: capable of being readily perceived by the sensibilities or understanding as certainly existent or present. . . ."

the ten signatures which he stated he observed being signed on that form. In any event our refusal to hold Form 15 valid for a want of a proper circulator's affidavit will not make any difference because of the findings that 36 out of the 47 signatures were invalid. The addition of even those valid signatures of the ten Goorin stated he saw (if the circulator's affidavit were permitted to be amended) will still not permit Elliott to meet the minimum requirement of 100 signatures for Allegheny County.

In relation to the circulator's affidavit for Wyoming County, Form 34, the circulator's affidavit is dated February *14*, 1976. However, the petition contains signatures (lines 101 through 125) dated February *16*, 1976. Elliott presented no testimony or evidence whatsoever to support his request for an amendment to this circulator's affidavit, although the Court advised counsel for Elliott that some evidence was needed. In view of the fact that Elliott presented nothing other than a statement of counsel and a motion to amend the circulator's affidavit through a proffered new affidavit, the Court has nothing upon which to base any discretionary approval and, therefore, Green's objection must be sustained and the 25 signatures shown on lines 101 through 125 of Form 34 must be declared to be invalid.

There remains one additional circulator's affidavit to which Green objected, i.e., Wayne County, Form 33. Elliott stipulated that the signature of "Gary J. Pozza" is not the signature of Mr. Pozza. Elliott presented Mr. Pozza, who testified that because of an injury two months prior, he was unable to sign and, therefore, he gave his father permission to sign his name. Neither the father nor the notary were called to testify. Counsel for Elliott presented an affidavit executed on the same evening during which it was presented at the hearing as an amendment to Form 33.

On cross-examination Pozza showed little knowledge of the manner in which the signatures were obtained on Form 33. He was trapped on questions concerning specific signatures and as a result recanted certain testimony. After observing Pozza's demeanor and appearance on the witness stand, the trial Judge has determined that his testimony was not credible, unreliable and cannot be accepted in support of the proffered amendment. *See Nomination Petition of Palmer*, 85 Dauphin 150 (C.D. 1966). The Court, therefore, holds that the circulator's affidavit to Form 33 is invalid, and that Elliott did not present credible evidence upon which the Court could exercise its discretion in granting an amendment to Form 33. As a result none of the signatures contained on Form 33 are valid.

Where a candidate desires to amend a nomination petition he or she must present some evidence upon which the trial Judge may base his discretion in granting such an amendment. Where no credible evidence is presented, the Judge cannot permit an amendment.

CONCLUSIONS OF LAW

1. A person desiring to have his or her name placed upon the ballot in a Democratic Primary Election for the office of United States Senator is required to present to the Secretary of the Commonwealth a nomination petition with the signatures of at least 100 registered and enrolled members of the Democratic Party in each of at least ten counties of the Commonwealth of Pennsylvania. Section 912 of the Election Code, 25 P.S. §2872.

2. The categories of objections as set forth in paragraph four of Green's petition, as quoted above, are proper objections to a nomination petition for the office of United States Senator in a Democratic Primary Election as provided in the Election Code.

3. If the Court finds that such a nomination petition is defective under the provisions of Section 976 of the Election Code, 25 P.S. §2936, or does not contain a sufficient number of genuine signatures of electors entitled to sign the petition, under the provisions of the Election Code, the petition shall be set aside. Section 977 of the Election Code, 25 P.S. §2937.

4. If the objections relate to material errors or defects apparent on the face of a nomination petition, or on the face of the accompanying or appended affidavit, the Court, after hearing, in its discretion, based upon substantial evidence, may permit amendments within such time and upon such terms as to payment of costs, as the Court may specify. Section 977 of the Election Code, 25 P.S. §2937.

5. On the basis of the detailed findings of fact set forth above, the Court concludes that Elliott's Nomination Petition contains less than one hundred signatures of registered and enrolled members of the Democratic Party in each of at least ten counties of the Commonwealth of Pennsylvania and is, therefore, invalid under the Election Code, and must be set aside.

In summary, as a result of the findings, conclusions and holdings mentioned above, the objections of Green to the nomination petition forms of nine counties must be sustained. This leaves Elliott with a balance of valid forms for only eight counties and, therefore, Elliott's nomination petition must be set aside. We therefore,

## ORDER

AND Now, this 15th day of March, 1976, after hearing, it being found and concluded that the nomination petition of Frank E. Elliott as a candidate for the Democratic nomination for the office of United States Senator contains the signatures of less than one hundred registered and enrolled members of the Demo-

cratic Party in each of at least ten counties of the Commonwealth of Pennsylvania, the prayer of William J. Green to set aside said nomination petition is granted, and it is ordered that the nomination petition of Frank E. Elliott, consisting of 35 Forms for 17 counties, be hereby set aside. The Prothonotary is directed to notify forthwith the parties hereto, or their counsel, of this Order, and also certify a copy thereof to the Secretary of the Commonwealth of Pennsylvania.

## APPENDIX

### DAUPHIN COUNTY

The signatures on the following lines are found to be invalid, and the objections thereto are sustained.

### FORM 5

*Category A:* 25, 27, 28, 35, 47, 48, 49, 50, 59, 68, 69, 70, 72, 76, 77, 78;

*Category B:* 2, 9, 11, 19, 32, 39, 40, 42, 43, 51, 52, 53, 54, 55, 56, 57, 60, 61, 62, 63, 64, 65, 66, 67, 75, 81, 83;

*Category F:* 3, 4, 6, 7, 12, 13, 16, 18, 21, 22, 29, 30, 36, 38, 44, 45, 46, 58, 71, 73, 74, 80, 82, 84, 85, 87;

*Category G:* 20;

### FORM 6

*Category A:* 6, 12, 18, 23, 32, 33, 38, 39, 43, 44;

*Category B:* 31;

*Category C:* 22;

### FORM 7

*Category A:* 3, 14;

*Category F:* 5, 6, 8, 9, 10, 11, 12, 13, 15, 16, 18, 19, 21, 22, 24 25.

### COLUMBIA COUNTY

The signatures on the following lines are found to be invalid, and the objections thereto are sustained.

### FORM 8

*Category A:* 27, 38, 64, 65, 99;

*Category C:* 29;
*Category F:* 17, 30, 33, 35, 36, 37, 56, 58, 84, 85, 91, 93, 96;
*Category G:* 25, 34, 52, 111, 116.

CLINTON COUNTY

The signatures on the following lines are found to be invalid, and the objections thereto are sustained.

FORM 9

*Category A:* 77, 123;
*Category F:* 12, 13, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 27, 28, 32, 33, 34, 35, 36, 37, 39, 40, 41, 44, 45, 47, 48, 50, 52, 53, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 67, 68, 70, 71, 73, 74, 75, 76, 79, 80, 81, 84, 85, 86, 87, 89, 90, 91, 93, 95, 96, 97, 98, 99, 100, 101, 102, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 124, 125.

ALLEGHENY COUNTY

The signatures on the following lines are found to be invalid, and the objections thereto are sustained.

FORM 13

*Category A:* 7, 14, 20, 41, 43, 48, 49, 51, 61, 64, 65, 67, 68, 79, 88, 92, 93, 94, 96, 98, 102, 105, 109, 121;
*Category B:* 85, 91;
*Category F:* 5, 24, 30, 45, 56, 57, 60, 74, 75, 87, 108, 113, 119;
*Category G:* 27, 89;

FORM 14

*Category A:* 4, 6;
*Category F:* 1;

FORM 15*

*Category A:* 2, 7, 8, 9, 11, 14, 15, 16, 17, 20, 21, 22, 24, 25, 27, 29, 30, 31, 33, 34, 35, 37, 38, 39, 40, 41, 43, 44, 45, 46, 47;

---

* All of the signatures contained on Form 15 are found to be invalid because the circulator's affidavit is found to be invalid as

*Category B:*  1;
*Category F:*  10, 18, 19, 28, 32.

## Lycoming County

The signatures on the following lines are found to be invalid, and the objections thereto are sustained.

### Form 20

*Category A:*  21, 46;
*Category F:*  2, 4, 6, 10, 12, 17, 23, 25, 27, 30, 31, 32, 33, 35, 47, 49, 51;
*Category G:*  52;
*Category H:*  38, 39;

### Form 21

*Category A:*  10, 14;
*Category C:*  5;
*Category F:*  4, 20;
*Category G:*  19, 24;

### Form 22

*Category A:*  10, 35;
*Category F:*  23, 28;
*Category G:*  17, 19.

## Montour County

The signatures on the following lines are found to be invalid, and the objections thereto are sustained.

### Form 24

*Category A:*  17, 60, 61, 91, 106, 107, 116;
*Category B:*  30, 36, 74;
*Category F:*  1, 9, 12, 15, 19, 23, 26, 27, 29, 31, 35, 46, 48, 49, 50, 52, 58, 59, 63, 67, 68, 69, 87, 88, 89, 93, 94, 95, 96, 100, 102, 112, 113, 118, 119, 121, 124;
*Category G:*  18, 105.

---

is more fully explained in the Memorandum Opinion. Nevertheless, the hearing Judge has made the specific line findings as set forth for Form 15 for the information of the parties.

## WAYNE COUNTY

The signatures on the following lines are found to be invalid, and the objections thereto are sustained.

### FORM 33*

*Category A:* 12, 14, 15, 26, 28, 76, 81, 82, 84;
*Category B:* 43;
*Category F:* 7, 10, 11, 18, 20, 22, 29, 30, 37, 39, 42, 57, 67, 69, 70, 73, 74, 85, 87, 99, 100, 109, 111, 114, 115, 120, 125.

## WESTMORELAND COUNTY

The signatures on the following lines are found to be invalid, and the objections thereto are sustained.

### FORM 35

*Category A:* 21, 30, 32, 34, 44, 47, 51, 55, 72, 93;
*Category C:* 42;
*Category F:* 29, 41, 46, 50, 101, 102, 105, 108;
*Category G:* 6, 27, 54;
*Category H:* 96.

## WYOMING COUNTY

The signatures on the following lines are found to be invalid, and the objections thereto are sustained.

### FORM 34

*Category A:* 13, 36, 61;
*Category F:* 2, 9, 23, 26, 30, 38, 39, 44, 69, 86, 88, 94, 96, 97, 106, 107, 123;
*Misc. Category:* The signatures on lines 101 through 125 are found to be invalid because they were all dated after the date of the circulator's affidavit as

---

* All of the signatures contained on Form 33 are found to be invalid because the circulator's affidavit is found to be invalid as is more fully explained in the Memorandum Opinion. Nevertheless, the hearing Judge has made the specific line findings as set forth for Form 33 for the information of the parties.

more fully explained in the Memorandum Opinion. Nevertheless the hearing Judge has made the specific line findings for lines 106, 107, and 123 for the information of the parties.