## In re Nomination Petition of David L. Shadding for the Office of City Commissioner

*Arnold R. Silverstein*, for Maurice Floyd.
*Harvey Anderson*, for David L. Shadding.

LEHRER, *J.*, April 8, 1987—This case involves a challenge to the democratic nomination petition of

David L. Shadding for the office of city commissioner in the 1987 primary election. The challenger is Maurice Floyd, a candidate for the same office.

Hearings in this challenge took place in six sessions between March 27 and April 8, 1987. In addition, the court empowered an election bureau official to verify challenged names and she expended approximately 50 hours in doing so.

Seven nomination petitions were stricken on the basis that the persons circulating the petitions were not registered members of the Democratic party. The evidence supporting these findings was ample and no one can offer any serious objection thereto. Those petitions are listed hereinafter as follows:

(1) Petitions labeled no. 1 and no. 2, circulated by one Linda Sherrill, each containing 50 signatures for a total of 100 signatures;

(2) Petition labeled no. 4, circulated by Rosalyn Dorsey, containing 50 signatures;

(3) Petition labeled no. 9, circulated by George Franklin, containing 50 signatures;

(4) Petition labeled no. 7, circulated by Crystal Shadding, containing 50 signatures;

(5) Petition labeled no. 8, circulated by Sheridan Harris, containing 37 signatures;

(6) Additionally, 27 names were stricken from petition no. 25, circulated by Anne Fox, on the grounds that those signatures were collected before Mrs. Fox registered as a Democrat on March 9, 1987;

(7) Petition no. 26, containing 50 names, purportedly circulated by Ronald Sharper, was stricken on the basis that Mr. Sharper did not in fact circulate the petition. 49 names were stricken. Mr. Sharper's signature as a nominator was allowed.

Challenger filed two separate formal pleadings. One contained general allegations averring insuffi-

cient signatures for various reasons. The other contained 328 specific line item signatures allegedly defective for various reasons. Both these documents bear a March 17, 1987, time stamp. Because Judge Levan Gordon disqualified himself and the case was assigned to the undersigned, a rule was not issued until March 24, 1987.

The evidence indicated and the court found and struck these 328 names for a combination of reasons (e.g., names that were signed in the binder were printed on the petitions, signatures in the petition did not match signatures in the binders, signatures were illegible, persons signing the petition were not in the registration binder, names were signed twice, and addresses listed with the signatures were not in the binder). There also appears to be no genuine dispute that the court's findings were not based on sufficient evidence.

On the second day of the hearing, petitioner Floyd notified respondent in open court of additional specific names that he sought to challenge. On the next day of the continued hearing, petitioner Floyd moved formally to amend his petition in order to challenge an additional 255 names (marked as the "AAA" list and made part of the record). Respondent objected to the addition but cited no legal authority limiting the court's discretion.

At this point in the proceedings, the court vacated its prior orders striking the 328 names originally challenged and directed Martha Johnson, the Records Supervisor for the City Commission, Registration Division, to re-examine all of the challenged names as a whole but directed her to separate her findings among the 328 grouping and the additional grouping. Ms. Johnson, serving in effect as a master to the court, spent 50 hours analyzing the challenged names and comparing them with the corre-

sponding signatures in the registration binder.

On April 6, 1987, (the next to the last day of the six sessions), when Ms. Johnson's report was received, respondent Shadding again objected to the amended challenges. At this session, his attorney was not present, but respondent distributed a copy of the *Wagner* case infra to the court and petitioner. Petitioner was present but also without his attorney. The court instructed the parties that they had an additional 48 hours to offer evidence or testimony challenging Ms. Johnson's findings and in default thereof, the court would accept them.

If *In re Wagner*, 510 Pa. 754, 511 A.2d 754 (1986), barred the amended challenges, respondent's nomination petition would then stand at 1032 names (reduced from an original 1723 names). One thousand names are required and the petition would have to be dismissed.

However, this court holds that *Wagner* does not bar consideration of those names that appear irregular or defective on their face (e.g., names printed in the petition in block letters, as opposed to being signed). The court found in Ms. Johnson's report a total of 139 names challenged on this basis. Ninety were among the first 328 and 56 of the names so challenged were included in the "AAA" amended challenge list. Of the aforesaid 139 names challenged in this category five were found to constitute valid signatures. Thus, at a minimum, 51 of the AAA amended challenge names were rejected on the basis of block letter printing. As such, these signatures could have been rejected outright by the County Board of Elections or the Secretary of the Commonwealth upon submission of the nomination petition for certification. This brought the petition to 981 names.

The court sees the rationale in applying *Wagner* as a bar to other types of challenges such as no address or occupation. However, it fails to see a public policy prohibiting challenges to facially invalid signatures insofar as all parties are on notice of such a defect and as aforesaid, the appropriate election bureau official could reject them outright. *Thompason v. Morrison*, 352 Pa. 616, 44 A.2d 55 (1945).

If the court were to have included all of the amended challenged signatures, at least another 100 would have been stricken.

The totality of respondent's submission contained numerous persuasive and troubling irregularities. The court heard from five alleged circulators. One, a 26-year-old woman, under the court's questioning, admitted that she had never been registered or voted in her life. The others all professed to have been registered but lost their cards. The court was charitable in merely rejecting their testimony without too much comment.

After the petitions containing these circulators were removed, about one-third, or one of three, remaining signatures were unquestionably invalid.

This situation makes the comments of the Commonwealth Court *In re Nomination of Elliott*, 26 Pa. Commw. 20, 362 A.2d 438 (1976), appropriate for recitation here:

"In passing, the court must note its distress over the casual, sloppy and indifferent manner in which nomination petitions are prepared and signed by our citizens. Nomination petitions are basic to the entire representative form of government upon which all of us must rely for the protection of our rights and the establishment of our responsibility. As happens all too often in these cases, evidence is received indicating that nomination petitions are circulated and distributed in an irresponsible manner . . .

Even an untrained eye can easily perceive that in many instances a nomination petition is signed several times by the same person . . . If the election process is to be truly reflective of the desires and intentions of our citizens, much more care must be given to the preparation of nomination petitions."