**In Re: Nomination Petition of Tony PAYTON, Jr. for the Office of Representative in the General Assembly District Number 179**

**Objection of: John A. Danford.**

Commonwealth Court of Pennsylvania.

Heard March 18 and 19, 2008.
Decided March 25, 2008.
Publication Ordered March 27, 2008.

James C. Crumlish III, Blue Bell, for petitioner.

Clifford B. Levine and Shawn N. Gallagher, Pittsburgh, for respondent.

OPINION BY Judge SMITH-RIBNER.

On February 21, 2008, John A. Danford (Objector) filed in this Court a petition to set aside the Nomination Petition of Tony Payton, Jr. (Candidate) for the Office of Representative in the General Assembly, 179th Legislative District. Objector averred that he is a duly registered Democratic elector in the 179th District. Candidate, an incumbent State Representative, must submit a nomination petition containing at least 300 valid signatures of registered Democratic electors from that district to appear on the April 22, 2008 primary election ballot. Section 912.1(14) of the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, *as amended,* added by Section 2 of the Act of December 12, 1984, P.L. 968, 25 P.S. § 2872.1(14). On February 12, 2008, Candidate filed his nomination petition containing 41 Pages with 1361 Lines of signatures.

A case management order was issued by Commonwealth Court on February 21, 2008 directing that Objector arrange to meet with Candidate or his representative at the county office responsible for voter registration to review every challenged signature before hearing. It directed the

parties to file with the Chief Clerk of the Court by 12:00 Noon on February 28, 2008 a stipulation that identified the total number of signatures submitted in the nomination petition, the total number of uncontested signatures, the total number of signatures challenged and each signature to which there was an objection, identified by Page and Line number, with the basis for the objection. Objector and Candidate also were ordered to identify all witnesses and to submit expert reports and curriculum vitae for expert witnesses intended to testify at hearing. Upon Candidate's application, the Court continued the hearing from February 28 to March 17 with stipulations and lists to be filed by 12:00 Noon on March 13. Objector filed stipulations and a list of witnesses on March 13, and Candidate filed stipulations, a list of witnesses, a list of facial defects subject to rehabilitation and an expert report and curriculum vitae for Michelle Dresbold, who was offered as an expert in handwriting analysis and was allowed to testify as such.

# I

## Candidate's Pre-hearing Motions

On March 14, 2008, Candidate filed three motions for relief. First was a Motion in Limine to Preclude Testimony and Report of Petitioner's Expert. He noted that the case management order required expert reports and curriculum vitae by March 13 and that Objector failed to comply. Nevertheless, Objector's list of witnesses identified Bill Reis as an expert to be called at hearing, and Candidate requested that Mr. Reis be precluded from testifying or filing an expert report. Second was a Motion to Quash Subpoena Duces Tecum Issued to Candidate. It stated that six Pages had been withdrawn from the nomination petition (Pages 2, 8, 13, 33, 35 and 36), that there were "global"

challenges (challenges to entire pages) to ten remaining pages (Pages 18, 19, 21, 28, 34, 37, 38, 39, 40 and 41), that the challenges to Pages 18 and 19 were based on "Bad Signature," that those for Pages 21 and 28 were based on claims that the circulator did not reside in the district and that the remaining challenges related to alleged defects in notarization.

Objector had served a wide-ranging subpoena duces tecum directing Candidate to bring four categories of documents to the hearing. They included (1) all documents including e-mails relating to his or the campaign's investigation, review and analysis of the qualifications of electors and circulators and the conduct of the execution, circulation and filing of nomination petitions; (2) all documents including e-mails relating to the payment of persons involved in the circulation of nomination petitions; (3) all documents including e-mails relating to Candidate's "compliance with Pennsylvania Campaign Finance Law, Pennsylvania Election Code and Pennsylvania Ethics Act"; and (4) all documents, including e-mails, relating to statements attributed to Candidate in a March 3, 2008 newspaper article.

Third was a Motion in Limine to Preclude Introduction of Evidence and to Limit Questioning of Witnesses Regarding Pages Withdrawn from the Nomination Petition and Pages that are Not the Subject of Global Challenges. Candidate argued that any evidence relating to the withdrawn Pages was wholly irrelevant and pointed out that a court cannot presumptively invalidate nomination signatures based upon nothing more than invalidity of other signatures obtained by a circulator. *See In re Pittsburgh Home Rule Charter*, 694 A.2d 1128 (Pa.Cmwlth. 1997) (refusing to disqualify remaining signatures obtained by circulator where twenty percent were deemed to be invalid). In

*In re Nomination Paper of Rogers,* 908 A.2d 942 (Pa.Cmwlth.2006) (one-Judge decision), President Judge Colins repeated the rule that an objector bears the burden of proving the invalidity of each individual line challenged and rejected as immaterial allegations by the objectors of patterns of fraud in the collection of signatures. Impeachment of witnesses through evidence of prior misconduct is prohibited under Pa. R.E. 608(b)(1), and questioning of circulators' conduct and their affidavits would be irrelevant where only two global challenges related to circulators' signatures and all others related to the residence of the circulator or the lack of notarization.

■ At the hearing on March 18, 2008, the Court first granted the Motion to Quash Subpoena Duces Tecum as to items (1), (2) and (3) identified in Schedule A attached to the subpoena. Where only two global challenges were stated to circulators' signatures, Objector's request for all documents including e-mails regarding the campaign's investigation and review of qualifications of circulators and of such documents relating to payment of circulators was well beyond the scope of specific challenges that were alleged. The request for all documentation relating to compliance with the Campaign Finance Law, the Election Code and the Ethics Code, was obviously overly broad, where there were no allegations at all referring to the first and the last, and a response to the second might well include all documents generated by the campaign. The Court denied the motion as to item (4), thereby permitting limited questioning of Candidate in regard to statements attributed to him in the newspaper article.

■ Next, the Court granted Candidate's Motion to Preclude Introduction of Evidence and to Limit Questioning of Witnesses. The Court recognizes an express provision in Section 976 of the Election Code, 25 P.S. § 2936, that the invalidity of any sheet of a nomination petition shall not affect the validity of the nomination petition if sufficient valid signatures remain. *See Pittsburgh Home Rule Charter* (refusing to invalidate presumptively valid signatures based simply upon invalidity of other similarly-gathered signatures). Also, Section 909, 25 P.S. § 2869, requires a circulator to attach an affidavit to each sheet, and therefore it would be improper to strike a particular sheet based on invalidity of an affidavit on another sheet. *Pittsburgh Home Rule Charter.*

The Court refused to allow any questioning as to the circulation of Pages that were withdrawn from the nomination petition or to permit questioning regarding circulation other than in regard to Pages 18 and 19, where the circulator's signature had been challenged. *See In re Nader,* 865 A.2d 8 (Pa.Cmwlth.) (noting many pages that the candidate withdrew upon which no evidence was presented as signatures thereon were no longer at issue), *aff'd,* 580 Pa. 134, 860 A.2d 1 (2004); *also see* Black's Law Dictionary 1632 (8th ed.2004) defining "withdraw," *inter alia,* as "to take back" or "to retract." If pages are withdrawn from a petition, there is nothing for the Court to consider. In this matter, the Court discerned no basis for hearing testimony from signers of withdrawn pages and so excused them all.

■ Finally, the Court ruled upon the Motion in Limine to Preclude Testimony and Report of Petitioner's Expert. As Candidate argued, he was not the party with the burden of proof but had complied with the case management order and had produced an expert report including a detailed examination of all of the challenged signatures. Despite Objector's assertion to the contrary, there obviously would be prejudice in requiring Candidate to meet expert opinions and analysis of which he

became aware for the first time at the hearing. *Compare by analogy Petition of Bishop*, 525 Pa. 199, 579 A.2d 860 (1990) (reasoning that the Election Code purpose is to provide persons seeking nomination with sufficient information to mount a defense to challenges). In the absence of a valid reason for not doing so, there must be a sanction for failing to produce an expert witness report where a party intends to call an expert at hearing. Hence, the Court granted Candidate's motion and excluded testimony by Objector's proposed expert witness Mr. Reis.

## II

### Applicable Legal Principles

The basic principles applicable to challenges to nomination petitions are familiar or by now should be familiar to any candidate who chooses to circulate nomination petitions in his/her run for elective office. The Election Code shall be liberally construed so as to protect a candidate's right to run for office and a voter's right to elect the candidate of his/her choosing. *In re Nader*, 580 Pa. 22, 858 A.2d 1167 (2004). The Court, however, may not disregard requirements of the Election Code. *Nomination Petition of Ross*, 411 Pa. 45, 190 A.2d 719 (1963). To set aside a nomination petition, the objector must prove that the petition does not contain the statutorily required valid signatures. *Nomination of Elliott*, 26 Pa.Cmwlth. 20, 362 A.2d 438, *aff'd*, 466 Pa. 463, 353 A.2d 446 (1976); *see also In re Nomination of Flaherty*, 564 Pa. 671, 770 A.2d 327 (2001).

With regard to an objector's challenges to a nomination petition, it is well-settled that the objections shall be made with specificity and that signatures which have not been challenged are presumed to be valid. *In re Johnson*, 509 Pa. 347, 502 A.2d 142 (1985). Moreover, new challenges may not be raised by amendment after the time period has run for raising objections inasmuch as the purpose of the Election Code is to provide fair notice of challenges to a nomination petition and to allow the candidate to mount a defense. *Petition of Bishop*.

It is also well-established that persons who sign a nomination petition must reside in the candidate's district and that in a primary election only those persons who are registered in the political party of the candidate may lawfully sign the candidate's petition. *Petition of Thompson*, 102 Pa.Cmwlth. 110, 516 A.2d 1278 (1984). Signatures that are illegible are invalid. *Nomination of Elliott*. Signatures using nicknames or initials that differ from the voter registration cards are not valid, and printed names as signatures are not valid absent substantial proof that the voters intended the printed names to be their actual signatures. *In re Nomination of Flaherty*; *In re Petition for Agenda Initiative*, 821 A.2d 203 (Pa.Cmwlth. 2003). Moreover, Section 908 of the Election Code, 25 P.S. § 2868, requires the a signer add his/her address and the date of signing, and defects such as the address or date having been filled in by another person are sufficient to warrant striking individual signatures. *In re Nomination Petition of Silcox*, 543 Pa. 647, 674 A.2d 224 (1996).

Notwithstanding the fact that Section 909 of the Election Code does not explicitly state that a circulator must be present when signatures are collected, the Supreme Court held in *In re Nomination of Flaherty* that signatures shall be removed from a nomination petition if the circulator who affirmed the petition was not present when the elector signed it. The court struck only those lines on specific pages where the signatures were not collected in the presence of the candidate-circulator

there. The remaining signatures that were collected in the presence of the candidate-circulator were not stricken by the court.

Finally, the Supreme Court in *In re Nader* reaffirmed procedural rulings from its earlier decision in *In re Nomination of Flaherty,* and after a review of relevant statutory provisions it held that the only individuals who may sign nomination papers/petitions were those individuals who previously had registered to vote, or who had delivered a completed registration form to election officials the same day the persons signed the nomination papers or who had postmarked their completed registration form the same day of signing the papers. It also reaffirmed that an elector shall add his/her residence, providing the city, borough or township, with the street and number and shall add the date of signing in words or numbers.

## III

### Specific Challenges

At the commencement of the hearing on March 18, 2008, Objector offered a joint stipulation identified as P–1 reflecting that Candidate agreed that 791 of the signatures submitted originally were invalid and had been withdrawn, leaving 570 signatures remaining for the Court's consideration. As indicated by the parties at hearing and by Candidate in his Proposed Findings of Fact, pp. 5 and 6, the total of 571 in Exhibit R–1 was revised to 570. Of those, there was no challenge to 183, either on an individual basis or as part of a global

challenge.[1] With the submission of the parties' proposed findings of fact by facsimile on March 21, 2008, as directed by the Court, the record in this proceeding was closed.

 Counsel for Objector argued global challenges to Pages 37, 38, 39, 40 and 41 on the ground that these Pages lacked any evidence of notarization. He relied upon *Nominating of Kloiber,* 26 Pa. Cmwlth. 50, 362 A.2d 484, 485 (1976) (one-Judge decision), where Judge Blatt agreed that nomination petitions with improperly completed affidavits are amendable at the discretion of the Court, but "nomination petitions with no affidavits at all leave nothing to be amended and are, therefore, fatally defective." Candidate responded with citation to cases including *In re Nomination Petition of Fowler,* 132 Pa. Cmwlth. 639, 574 A.2d 127 (1990), and *In re McAndrew,* 105 Pa.Cmwlth. 503, 524 A.2d 1072 (1987), where this Court has approved amendment to petitions containing affidavits that were incomplete in some respect. These cases, however, restate the principle from *Kloiber* that nomination petitions with no affidavits at all are fatally defective. The Court thus granted the challenges and invalidated all signatures on Pages 37, 38, 39, 40 and 41, which were 79 of the total of 570 signatures before the Court.

 The Court heard testimony on the global challenge to Page 18 based on "Bad Signature." Jenette Pinkney, the circulator of Page 18, was called. She testified that she watched the signers fill

---

1. Objector's Counsel questioned the use of the digital representation of electors' signatures contained in the Statewide Uniform Registry of Electors (SURE) for purposes of comparing the signatures on the nomination petition sheets by the Court and the expert rather than the original, physical voter registration cards. In the absence of any compelling reason to do otherwise, the Court determined to proceed using the SURE system to decide signature challenges, which this Court has done since it became available. *See In re Nomination Paper of Rogers,* 914 A.2d 457 (Pa.Cmwlth.) (one-Judge decision, Kelley, S.J.), *aff'd,* 589 Pa. 86, 907 A.2d 503 (2006).

out each line. The Court sustained an objection to a question asking her if the handwriting on certain lines appeared to be the same. In response to questions regarding specific lines she answered that the person who signed filled in the date. Finding the witness to be credible, the Court overruled the global challenge to Page 18. Objector next called Otis Jones, the circulator of Page 19. He was not present, but the Court concluded that it could rely on expert testimony in regard to a "Bad Signature" challenge. Credible expert testimony proved that Mr. Jones' signature was valid based on his signature on file in the SURE system, and the Court then overruled the global objection to Page 19.

■ In addition, Objector raised global challenges to Pages 21 and 28 on the ground that the circulators of those pages resided out of the district. Section 909 of the Election Code requires a circulator's affidavit to include a statement "that he or she is a qualified elector duly registered and enrolled as a member of the designated party of the State, or of the political district, as the case may be, referred to in said petition...." As noted in his Motion in Limine to Preclude Introduction of Evidence and as repeated at the hearing, Candidate conceded that the circulators of those two Pages resided outside the district, but he reserved the right to assert that they were eligible to serve as circulators, citing *Morrill v. Weaver*, 224 F.Supp.2d 882 (E.D.Pa.2002) (holding that requirement in Section 951(d), 25 P.S. § 2911(d), that circulators of nomination papers for nomination by political bodies be registered voters and residents of the district violated rights of free speech and freedom of association under First and Fourteenth Amendments to the United States Constitution). In prior cases, it has been noted that *Morrill* is not binding

upon this Court. *In re Nomination Paper of Rogers* (Colins, P.J.); *In re Petition for Agenda Initiative.* The Court decided to enforce the plain language of Section 909 and struck Pages 21 and 28. This resulted in striking 28 signatures.

With the assistance of the handwriting expert Ms. Dresbold as needed, the Court reviewed the remaining line-by-line challenges. In many cases the Court was able to find upon view that signatures were or were not genuine. When in doubt, the Court heard and weighed testimony from the expert witness. As noted, Candidate stipulated before the hearing that 791 of his original 1361 signatures were invalid, leaving 570 at issue at the time of hearing, as shown in Candidate's Exhibit R–1. There were no challenges to 183 of those signatures; therefore 387 were at issue. Objector needed to have at least 271 or more invalidated to set aside the petition; conversely, Candidate needed at least 117 challenges to be decided in his favor. Challenges included Not Registered (NR), involving not registered at address or possible name change since signing the registration form; Bad Signature (BS), where the signature was claimed not to match that on the voter registration record or where two or more were claimed to be in the same hand; Wrong Party (WP), where the signer was alleged not to have been registered Democratic at the time of signing; Not in District (ND), where the signer allegedly did not reside in the district; Duplicate, where the signer allegedly signed more than once; fraudulent house number; and date out of sequence. Objector's Exhibit P–3.

■ The Court found as follows regarding challenges to individual lines:

Page 1 Not stricken 0
Stricken 8 (Stipulated invalid—Lines 12, 13, 14, 16, 36, 37, 38, 40)
Page 3 Not stricken/objection withdrawn 5
Stricken 7 (Line 2–BS; 9–BS; 11–BS; 14–NR; 18–NR; 41–BS; 49–BS)

Page 4 Not stricken/objection withdrawn 8
 Stricken 2 (Line 12–BS; 46–stipulated invalid)
Page 5 Not stricken/objection withdrawn 20
 Stricken 7 (Line 2 & 4–BS; 5–NR; 9–BS; 21–
 NR; 39–BS; 41–BS) 2
Page 6 Not stricken/objection withdrawn 19
 Stricken 4 (14–NR; 22–NR; 38–NR; 42–WP
Page 7 Not stricken 6
 Stricken 3 (Line 2–NR; 20–BS; 38–NR)
Page 9 Not stricken/objection withdrawn 13 3
 Stricken 4 (Line 3–NR; 7–BS; 36–WP (no
 affiliation); 40–NR)
Page 10 Not stricken/objection withdrawn 9
 Stricken 5 (Line 16–NR; 18–stipulated invalid;
 40–BS; 43–BS; 47–BS)
Page 11 Not stricken/objection withdrawn 7
 Stricken 4 (Line 13 & 14–BS; 37–BS; 40–NR)
Page 12 Not stricken/objection withdrawn 22
 Stricken 1 (Line 29 stipulated invalid)
Page 14 Not stricken/objection withdrawn 6
 Stricken 6 (Line 12–NR; 15–NR; 19–BS; 30–
 WP; 39–NR; 41–BS)
Page 15 Not stricken 10
 Stricken 3 (Line 4–BS; 14–NR; 20–NR)
Page 16 Not stricken/objection withdrawn 9
 Stricken 4 (Line 10–stipulated invalid; 25–BS;
 29–WP; 31–BS)
Page 17 Not stricken/objection withdrawn 6

 Stricken 4 (Line 4–BS; 5–BS; 10–NR; 19–
 BS)
Page 18 Not stricken 7
 Stricken 0
Page 19 Not stricken 5
 Stricken 1 (Line 14–ditto marks, no house
 number)
Page 20 Not stricken 1
 Stricken 3 (Line 1–BS; 12–BS; 19–NR)
Page 22 Not stricken 0
 Stricken 1 (Line 12–BS)
Page 23 Not stricken 9
 Stricken 3 (Line 3–NR; 15 & 16–BS)
Page 24 Not stricken/objection withdrawn 10
 Stricken 2 (Line 4–NR; 7–BS)
Page 25 Not stricken 8
 Stricken 2 (Line 1–BS; 4–BS)
Page 26 Not stricken 2
 Stricken 2 (Line 7–BS; 9–BS)
Page 27 Not stricken 2
 Stricken 1 (Line 6–BS)
Page 29 Not stricken 0
 Stricken 1 (Line 1–BS) 4
Page 30 Not stricken 1
 Stricken 0
Page 31 Not stricken 2
 Stricken 0.

After evaluating the witnesses' credibility and other relevant evidence, the Court

**2.** Objector raised a challenge to all 50 signatures on Page 5 based on the assertion that they had been altered because each of the signers included the House Number in the box labeled "Street or Road" and someone in another hand repeated each of those house numbers in the box labeled "House No." He referred, among other cases, to this author's unpublished opinion in *In re Nomination Petition of Hendron* (Pa.Cmwlth., No. 190 M.D. 1996, filed March 4, 1996). Counsel for Candidate cited *In Re Treichel*, 898 A.2d 650 (Pa.Cmwlth.) (one-Judge decision), *aff'd*, 586 Pa. 526, 896 A.2d 507 (2006) (noting that Section 976 of the Election Code provides that no petition may be filed if it contains "material alterations made after signing without the consent of the signers"). The Court reviewed cases cited and declined to strike the signatures. In cases such as *Silcox* and *Hendron* signatures were stricken because some of the required information was supplied in a different hand. Here, the required house number was provided by the signer along with the street in the column for the street; the house number was repeated by another in the correct box. All of the required information was provided by the signer, and the alteration was deemed not material.

**3.** Lines 15 and 16 had names of electors who signed with street address in the 179th District different from that in the registration records. The Court reserved ruling on these

and then declined to strike them after considering *In re Nomination Petition of Brown*, 846 A.2d 783 (Pa.Cmwlth.2004) (one-Judge decision) (disallowing amendment to challenge different address in the district, where the voter registration statute would permit voting once after removal).

**4.** A subpoena for Blanche Jacobs, the circulator of Page 29, was quashed where there were no global challenges based upon her affidavit as circulator. After considering the evidence offered, the Court entertained a motion by Candidate's Counsel to quash the subpoenas issued to the following circulators, with ruling reserved at the time of disposition on the merits of the petition to set aside: Donald Frazier, Ronnie Lozada, Angela Pernell, Phillip Robinson, Karen Taylor and John Terry. The Court grants the motion to quash the subpoenas because Objector did not raise circulator challenges as to these individuals. Objector, likewise, was not allowed to question Candidate regarding the circulation of withdrawn pages, but Objector was permitted to question Candidate about specific statements he made to a news reporter regarding the campaign. Candidate credibly testified that he removed the person in charge of organizing field activities and obtaining volunteers because that person did not perform up to the level expected.

finds that the record yields the following tally. Total signatures from among 387 at issue at the start of the hearing but deemed to be valid were 202. That number, added to the 183 signatures not challenged, yields a total of 385 valid signatures, which is greater than the 300 valid signatures needed by Candidate to allow his name to appear on the Democratic ballot. The total number of challenges sustained by the Court was 78. That figure, added to 79 signatures stricken due to lack of notarization and 28 signatures stricken because circulators were out of the district, yields a total of 185 successful challenges, well short of the 271 successful challenges needed by Objector to prevail in his petition to set aside.

## IV

### Conclusion

After reviewing this matter in its entirety, the Court concludes that the petition to set aside must be resolved in Candidate's favor because Objector failed to sustain his burden of proving that the nomination petition does not contain at least 300 valid signatures as required by Section 912.1(14) of the Election Code. *In re Nomination of Flaherty.* Therefore, the Court denies Objector's petition to set aside and orders that Candidate's name shall appear on the 2008 primary ballot as a candidate for Representative in the General Assembly, 179th Legislative District.

Before concluding this matter, the Court points out that a substantial number of the 1361 signatures originally submitted were stipulated to be invalid or determined by the Court to be invalid. Because of the extensive effort and time required to dispose of this matter, the Court stresses that candidates need to fully instruct themselves and their circulators on the detailed legal requirements of the signature collection process and to better monitor their performance so as to reduce or eliminate the type of imbalances seen here and to reduce the need for litigation. On the other hand, Objector failed to produce an expert report and evidently failed to review Candidate's expert report in an effort to ascertain to the extent possible the validity of the remaining challenges. It therefore is reasonable to conclude that the challenges were framed without the benefit of expert advice, particularly when many of the challenged signatures were held to be valid by the Court without the need for expert testimony and Objector withdrew many other signature challenges. Better planning and compliance with the Court's case management order should prevent a repetition of the situation that occurred here. *See Nomination of Elliott.*

### ORDER

AND NOW, this 25th day of March 2008, after hearings conducted on March 18 and 19, 2008 on the objections to the nomination petition of Tony Payton, Jr., the Court hereby denies the petition filed by John A. Danford to set aside the nomination petition. The Court also grants the motion made at the close of hearing to quash the subpoenas issued to the individuals referred to in n4 of the foregoing opinion.

The Chief Clerk of the Commonwealth Court is directed to notify all parties and Counsel of record of the entry of this order, and he shall further certify a copy hereof to the Secretary of the Commonwealth who shall certify the name of Tony Payton, Jr. to appear on the April 22, 2008 Democratic primary ballot as a candidate for Representative in the General Assembly, 179th Legislative District.

Each party shall bear his own costs in regard to this litigation.