In re PETITION FOR AGENDA INITIATIVE to Place a Proposed Ordinance on the Agenda of a Regular Meeting of Council for Consideration and Vote as Follows: "An Ordinance of the County of Allegheny, Commonwealth of Pennsylvania, Directing that a Referendum Question Amending Article III, Section 3 of the Allegheny County Home Rule Charter, Pursuant to the Home Rule Charter and Optional Plans Law and Second Class County Charter Law, Be Placed on the May 20, 2003 Municipal Primary Ballot."

Objection of Thomas E. FLAHERTY, in His Individual Capacity and as Chairman of the Democratic Party of Allegheny County.

Appeal of Allegheny County Division of Elections, Department of Administrative Services.

In re Petition For Agenda Initiative to Place a Proposed Ordinance on the Agenda of a Regular Meeting of Council for Consideration and Vote as Follows: "An Ordinance of the County of Allegheny, Commonwealth of Pennsylvania, Directing that a Referendum Question Amending Article III,

Section 3 of the Allegheny County Home Rule Charter, Pursuant to the Home Rule Charter and Optional Plans Law and Second Class County Charter Law, Be Placed on the May 20, 2003 Municipal Primary Ballot."

Objection of Thomas E. Flaherty, in His Individual Capacity and as Chairman of the Democratic Party of Allegheny County.

Appeal of Sean W. Moran.

In re Petition For Agenda Initiative to Place a Proposed Ordinance on the Agenda of a Regular Meeting of Council for Consideration and Vote as Follows: "An Ordinance of the County of Allegheny, Commonwealth of Pennsylvania, Directing that a Referendum Question Amending Article III, Section 3 of the Allegheny County Home Rule Charter, Pursuant to the Home Rule Charter and Optional Plans Law and Second Class County Charter Law, Be Placed on the May 20, 2003 Municipal Primary Ballot."

Objection of Thomas E. FLAHERTY, in His Individual Capacity and as Chairman of the Democratic Party of Allegheny County.

Appeal of Thomas E. Flaherty.

Commonwealth Court of Pennsylvania.

Argued March 5, 2003.
Decided April 14, 2003.

Charles P. McCullough and Allan J. Opsitnick, Pittsburgh, for appellant Allegheny County Division of Elections.

David J. Armstrong, Pittsburgh, for appellee, T. Flaherty.

Robert J. Ridge, Pittsburgh, for appellee, S. Moran

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

This case involves consolidated appeals by the Allegheny County Division of Elections, Department of Administrative Services (County), Sean Moran (Moran) and Thomas E. Flaherty (Flaherty) from the February 4, 2003 order of the Court of Common Pleas of Allegheny County, which sustained in part Flaherty's appeal and set aside an Agenda Initiative Petition filed by Moran because it lacked the required 500 signatures from registered voters of Allegheny County. The petition sought to have the Allegheny County Council consider and vote on a proposed ordinance directing that a referendum be placed before the voters in the May 2003 municipal primary election to amend the Allegheny County Home Rule Charter (Charter), 302 Pa.Code §§ 1.1–101––1.14–1407, by requiring the replacement of certain elected Row Officers with officials appointed by the County's Chief Executive and confirmed by the County Council.

I

The Charter was approved by the voters of Allegheny County on May 19, 1998 and became effective on January 1, 2000. *See* the Act commonly known as the Second Class County Charter Law, Article XXXI–C of the Second Class County Code, Act of July 28, 1953, P.L. 723, *as amended*, added by Section 3 of the Act of May 20, 1997, P.L. 149, 16 P.S. §§ 6101–C––6113–C, expired in part January 3, 2000. The County's form of government includes an elected County Council and Chief Executive and an appointed professional Manager; its elected officers include fifteen County Council members, the Chief Executive and such other officers as may be required by law. 302 Pa.Code §§ 1.3–301, 1.3–303. The Charter provides for the agenda initiative mechanism whereby voters may propose ordinances germane to county government for consideration and vote by the County Council by filing an Agenda Initiative Petition limited to one subject and signed by at least 500 registered voters of the County. 302 Pa.Code § 1.12–1201.

Pursuant to the Charter, the County Council enacted the Allegheny County Administrative Code (Administrative Code) by Ordinance No. 8 on June 20, 2000, which established procedures, among others, for the agenda initiative petition and voter referendum process. Under Section 1101.01, an agenda referendum petition is the same as an agenda initiative petition, and under Section 1101.02(C) agenda initiatives and voter referendums proposing amendments to the Charter must follow procedures in the Home Rule Charter and Optional Plans Law (Home Rule Charter Law), 53 Pa.C.S. §§ 2901–2984. Under Section 1101.08, upon receipt of an Agenda Initiative Petition the County Council Clerk shall complete a notice of filing to be distributed to the person filing the petition, the County Council President, the Chief Executive, the Manager, the Solicitor and the Division of Elections. Within ten business days the Council Clerk shall conduct a "facial completeness review" of the petition, and the Solicitor shall conduct a legal review and report the results to the Council Clerk within ten days of receipt of the petition. The Council Clerk thereafter shall issue a statement of certification of the sufficiency or insufficiency of the peti-

tion, and the decision is subject to appeal to the common pleas court within seven days of the certification.

On November 19, 2002, Moran, representing a group known as the Citizens for Democratic Reform, filed with the County Council Clerk an Agenda Initiative Petition proposing an ordinance for consideration and vote by the County Council establishing a referendum on changing the selection process for Row Officers and consolidating their functions. Moran requested the County Council to submit the following question to the voters in the May 2003 primary election:

> Shall Allegheny County's Home Rule Charter, Article III, Section 3, be amended to (a): replace the elected Clerk of Court, Jury Commissioners, Prothonotary, Recorder of Deeds and Register of Wills with a Clerk of Records appointed by the Chief Executive and confirmed by County Council and (b) replace the elected Coroner, Sheriff and Treasurer with a Medical Examiner, Sheriff and Treasurer respectively, appointed by the Chief Executive and confirmed by County Council.[1]

On December 9, 2002, the Council Clerk certified Moran's petition as complete. On December 16, 2002, Flaherty appealed to the Court of Common Pleas requesting that it set aside the petition on the grounds that it lacked at least 500 signatures from registered voters, that the proposed amendment must be submitted to a government study commission before being presented to the voters and that any change in the form of government could not take place before January 1, 2005, or five years from the "effective date" of the Charter.

The County filed preliminary objections in the nature of a demurrer, contending that a government study commission was not required and that under Section 6111–C(c) of the Second Class County Charter Law, 16 P.S. § 6111–C(c), which was saved from expiration by Section 6113–C, 16 P.S. § 6113–C, amendments to the Charter may be considered five years after the "date of its approval" by the voters. The County did not respond to Flaherty's objection that Moran's petition lacked the required 500 signatures. Moran's preliminary objections raised similar claims and also addressed Flaherty's objection that the Agenda Initiative Petition did not contain 500 signatures from registered voters.

On January 27, 2003, the trial court heard testimony relating to voter registration records and voter signatures from Mark Wolosik, an official of the Division of Elections, whom the court found to be a credible witness. The court, in addition, examined sworn affidavits presented by Moran in an attempt to rehabilitate many of the signatures that Flaherty challenged, particularly those involving printed names, and it also reviewed voter registration cards and compared their information and signatures with the petition as well as in some cases with the affidavits. The court heard oral argument on the timing of the referendum and whether a government study commission was required.

In holding that only 464 of the proffered 606 signatures were valid, the trial court noted that the largest group of invalid signatures included printed names and that it also struck signatures because names, addresses or signatures on the petition differed from the respective voter registration cards. Relying on *In re Nomination Petition of Flaherty,* 564 Pa. 671,

---

1. Section 6105–C(c) of the Second Class County Charter Law, 16 P.S. § 6105–C(c), which expired January 3, 2000, provided that the Charter adopted by the County should not eliminate any elected county officers other than the County Commissioners.

770 A.2d 327 (2001), and *In re Nomination Petition of Wesley,* 536 Pa. 609, 640 A.2d 1247 (1994), the court sustained Flaherty's challenges to 142 signatures.[2] Forty-nine of those challenges were sustained because the voters printed instead of signed their names on the petition, which clearly read "Do Not Print." The trial court relied on *Nomination Petition of Flaherty* to rule that Moran's affidavits may constitute substantial proof of the affiants' signatures only if they attested that they intended the printed names to be their actual signatures, which they did not do. It was not enough for the affiants to simply attest that the printed names were theirs and that they signed the petition.

As for the government study commission, the trial court noted that the County adopted its Charter pursuant to the Second Class County Charter Law, which provides that the entire Act is to be considered and construed in pari materia with the Home Rule Charter Law. The court determined that any amendment to the Charter through voter referendum must follow the procedure set forth in the Home Rule Charter Law, and neither Section 2943 of the Law, 53 Pa.C.S. § 2943, nor Section 2944, 53 Pa.C.S. § 2944,[3] refers to a government study commission. Because the Home Rule Charter Law does not require a government study commission as a prerequisite to the amendment of an existing form of government, the court

consequently overruled Flaherty's objection in that regard, citing *Lyons v. City of Pittsburgh,* 137 Pa.Cmwlth. 330, 586 A.2d 469 (1991).

The last question that the trial court resolved was the date on which the five-year period began to run for submitting changes in the form of government through the Agenda Initiative Petition. Section 6111–C(c) of the Second Class County Charter Law provides that the question of changing a form of government approved by the voters may not be submitted to the voters earlier than five years after the Charter's approval date, whereas Section 2929 of the Home Rule Charter Law, 53 Pa.C.S. § 2929, provides that voters of a municipality which adopted a charter or optional plan of government pursuant to that section may not vote on changing the form of government until five years after the charter or optional plan became effective. The court indicated that any ambiguity that might exist in the Charter was eliminated when the Administrative Code was adopted and provided that a voter referendum must follow procedures in the Home Rule Charter Law. As such January 1, 2005, or five years from the effective date of the Charter, was the earliest date on which changes in the form of government could be submitted to the voters.

---

**2.** Counsel agreed that the Agenda Initiative Petition initially contained 606 signatures; that Moran conceded prior to the hearing that 71 signatures were invalid; and that up to that point in the hearing the court had stricken 55 names, leaving 480 signatures. N.T., January 27, 2003, at 197. Thereafter, the court struck 16 more signatures because they were printed or because addresses and/or names on the petition differed from the respective voter registration cards. Counsel agreed that the final count was 464 remaining signatures. *Id.* at 201–220.

**3.** Section 2943 governs petitions for referendum or ordinance proposing amendment to a home rule charter or optional plan of government adopted by the electors and provides that the petition proceedings shall follow and be subject to provisions of election laws pertaining to the signing, filing and adjudication of nomination petitions insofar as such provisions are applicable. Section 2944 provides in pertinent part that the referendum shall be held when election officials find that the initiative petition or ordinance is in proper order.

The trial court overruled in part the County's preliminary objection in the nature of a demurrer and overruled in part Moran's preliminary objections, but it sustained Flaherty's objection that the Agenda Initiative Petition lacked 500 signatures of registered Allegheny County voters and, as a result, set aside the petition. Additionally, the court sustained Flaherty's objection that any proposed change in the form of government cannot take place before January 1, 2005, but it overruled Flaherty's objection that the proposed amendment must be submitted to a government study commission before being presented to the voters and sustained the County's preliminary objection to that extent.[4]

## II

The Court's review will focus initially on the trial court's order regarding the validity of the signatures on Moran's Agenda Initiative Petition, recognizing that if the Court agrees with the trial court's decision it need not reach the essentially two remaining issues presented in this case regarding the need for a government study commission or the date from which the five-year moratorium on charter change begins to run. If the petition does not meet the threshold requirements of whether it contained 500 valid signatures, it consequently must be set aside, and any discussion of the remaining issues would amount to nothing more than an advisory opinion, which this Court may not issue. *See Borough of Marcus Hook v. Pennsylvania Municipal Retirement Board,* 720 A.2d 803 (Pa.Cmwlth.1998). The Court's review will be limited to determining whether the trial court's findings are supported by substantial evidence or whether it abused its discretion or committed an error of law. *Nomination Petition of Flaherty.*

Moran argues that the uncontested sworn affidavits were sufficient to rehabilitate the printed signatures and that the trial court thus erred in striking those signatures. He contends that in *Nomination Petition of Flaherty* the Supreme Court did not establish an absolute per se prohibition against validating printed signatures, but rather it allowed rehabilitation of such signatures upon substantial proof. Furthermore, the Court in *Department of Transportation, Bureau of Traffic Safety v. Mitchneck,* 25 Pa.Cmwlth. 145, 360 A.2d 831 (1976), held that the typewritten name of the acting director of the bureau was insufficient to meet the document certification requirements of former Section 1224 of The Vehicle Code, Act of April 29, 1959, P.L. 58, *as amended, formerly* 75 P.S. § 1224, repealed by Section 7 of the Act of June 17, 1976, but it nevertheless contemplated some form of evidence to demonstrate that the acting director intended his typewritten name to

---

4. The County presented two questions for review: whether amendments to the Charter that would change the form of government may be placed on the ballot for consideration by the electorate five years after the date on which the Charter was originally approved by referendum as provided by Section 6111–C(c) of the Second Class County Charter Law, and whether Section 2929 of the Home Rule Charter Law prohibits the electorate from considering any amendments to the Charter until five years after the effective date of the Charter. Moran presents three questions: whether the voters may propose an amendment to the Charter prior to January 1, 2005; whether uncontested affidavits are sufficient to rehabilitate the challenged printed names or signatures at variance with the electors' voter registration cards; and whether the trial court should have employed an abuse of discretion standard when reviewing the County Council Clerk's certification of an agenda initiative as complete. Flaherty raises one question: whether the trial court erred in determining that a government study commission was not required.

be his signature. Moran submits that no such evidence was ever presented in *Mitchneck*. In any event, credible rehabilitation evidence has been liberally allowed in cases interpreting election laws. *In re Nomination Petition of Elliott*, 26 Pa. Cmwlth. 20, 362 A.2d 438, *aff'd*, 466 Pa. 463, 353 A.2d 446 (1976) (candidate must present evidence on which court may base its discretion to grant amendment).

Moran asserts that 33 uncontested sworn affidavits were submitted from voters who printed their names and that they attested to the genuineness of their signatures on the Agenda Initiative Petition, which was sufficient to rehabilitate their signatures. The trial court invalidated as well three signatures because the women signers, registered to vote under their maiden names, signed the petition with some form of their married names. Moran analogizes these signatures to those which, under *In re Nomination Petition of Cooper*, 163 Pa.Cmwlth. 430, 643 A.2d 717 (1994), would not be invalidated merely for lack of a marital prefix. Moran cites *Cooper* also for authority to rehabilitate three signatures where the voters used a nickname or initials, and he maintains that affidavits from these voters provided substantial proof to confirm their identities on the petition.[5]

In response Flaherty submits that the holdings in *Nomination Petition of Flaherty* and in *Mitchneck* require substantial proof that the voters intended their printed names to be their actual signatures. Here, the sworn affidavits merely stated that the affiants reviewed their voter registration cards and the Agenda Initiative Petition and that they recognized and affirmed their signatures on the petition as their own. According to Flaherty, an indication that a printed name is the signature

used to sign checks or other legal documents is the type of evidence required to rehabilitate the printed signature, and Moran failed to proffer such evidence. Further, signatures should be stricken under *Nomination Petition of Flaherty* when it is shown that the voters failed to properly notify election authorities of a change in the voters' names or addresses.

### III

Contrary to Moran's view that the trial court should have reviewed the County Council Clerk's certification under an abuse of discretion standard, the court relied on Article XI, § 1101.09(E) of the Administrative Code, which requires the court to follow procedures set forth in Section 977 of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2937, governing objections to nomination petitions and papers, when ruling on objections in voter referendum proceedings. Section 977 requires a court to set aside a nomination petition if it does not contain a sufficient number of valid signatures of electors eligible to sign the petition. *Nomination Petition of Elliott.*

In setting aside the Agenda Initiative Petition, the trial court followed *Nomination Petition of Flaherty*, in which the Supreme Court rejected printed and other defective signatures on the candidate's nominating petitions and in doing so articulated the following principles:

> Section 908 of the Election Code directs that all electors shall sign their name to a candidate's nomination petition. 25 P.S. § 2868; *In Re Nomination Petition of Silcox*, 543 Pa. 647, 647, 674 A.2d 224, 225 (1996). Electors are required to sign their name to a candi-

---

**5.** *See* N.T. at 108–114, 151 involving voters' use of maiden/married names and N.T. at 81– 85, 170 involving voters' use of nicknames/initials.

date's nomination petition as a means of preventing forgery and assuring that each elector personally signs the petition with an understanding of what he is signing. Following each election, the registration commission has the duty of comparing a voter's signature upon voting with the voter's signature on file with the district registrar in order to assure that the voter's signature is genuine. 25 P.S. § 961.702. *An elector's name will be stricken where the elector prints his name upon a candidate's nomination petition so that it does not match his signature on his voter registration card.* In Re Nomination Petition of Cooper, 163 Pa. Commw. 430, 447, 643 A.2d 717, 725 (1994).

. . . .

[W]e note that electors have a responsibility, as where an elector moves to a new address, to contact the registration commission and obtain a new registration card when their card is damaged or destroyed. In any event, we find that an elector who prints her name on a nomination petition has not properly signed the petition, as required by the plain language of Section 908 of the Election Code, 25 P.S. § 2868. *We believe that there is a discernible difference between a name as printed and a name as signed.* A person's name as signed is perceived to be an insignia used by that person to represent herself and generally is made in a manner that is not easily traceable, as in the case of a person's printed name. Given this difference, as well as the importance of insuring the integrity of the election process, we find that in stating that a person must 'sign' the nomination petition, the General Assembly intended that a person make that insignia that the person uses to represent herself, rather than print her name. *See* 25 P.S. § 2868; 1 Pa.C.S. § 1921(b). Therefore,

absent substantial proof that the person intended her printed name to be her signature, a person may not validly print her name upon a nomination petition. *See e.g., Commonwealth Dep't of Transp. v. Mitchneck,* 25 Pa. Commw. 145, 147–48, 360 A.2d 831, 832 (1976) (a typewritten name cannot be a person's signature without proof that the person intended the typewritten name to act as his signature). . . .

. . . .

Next, Appellant argues that the Commonwealth Court improperly accepted the signatures of seven electors from Erie County and nine electors from Philadelphia County whose addresses on Candidate's nomination petition did not match the addresses stated on their voter registration cards. We agree.

A person is required to indicate, under penalty of perjury, his or her place of residence in order to register as an elector. 25 P.S. § 961.501. Furthermore, when electors move either within the same county or to another county within the Commonwealth, they must notify the registration commission of their new address by filing a removal notice generally no later than 30 days preceding an election. . . . Thus, absent extraordinary circumstances, electors who declare a residence at an address different than the address listed on their voter registration card are not qualified electors at the time they sign a nomination petition unless they have completed the removal notice required by the Voter Registration Act.

*Id.,* 564 Pa. at 679–681, 770 A.2d at 332–333 (emphasis added).

The affidavits submitted to rehabilitate the printed signatures did not constitute substantial proof that the voters intended their printed names to be their

actual signatures as demanded by *Nomination Petition of Flaherty*. For example, the trial court reviewed an affidavit from Denise Clift, who printed her name on the petition and stated in her affidavit that she affirmed the printed signature on line 7 of Exhibit B. R.R. at 233A. A copy of her voter registration card shows that she signed her name in cursive. R.R. at 233B. The court therefore struck the signature after finding the affidavit insufficient to rehabilitate the printed signature.[6] The court likewise struck three signatures where the women signed the petition using some form of their married names although registered to vote under their maiden names along with three other signatures using a nickname or initials. Assuming that the court erred in striking signatures using married names, *see Nomination Petition of Cooper*, the Court cannot agree that using nicknames or initials that differed from the voter registration cards should not have been stricken. *Id.* Thus the Court will allow the three married women's signatures, but the total number of registered voters on the petition remains at 467, or below the required 500 registered voters.

After an exhaustive review of the record, the Court concludes that the trial court's findings were supported by substantial evidence and, moreover, that the court neither abused its discretion nor committed an error of law in setting aside the Agenda Initiative Petition because it lacked at least 500 signatures of registered voters in Allegheny County.[7] The principles that the Supreme Court articulated in *Nomination Petition of Flaherty* apply equally here and require that this Court uphold the decision to strike printed signatures from the petition along with those using nicknames or initials which were not shown to be the actual signatures of the voters. The Court, accordingly, affirms the order of the trial court as modified. Because of its decision, the Court will not address nor offer an advisory opinion on the remaining issues presented. *Borough of Marcus Hook.*

### *ORDER*

AND NOW, this 14th day of April, 2003, the order of the Court of Common Pleas of Allegheny County is hereby affirmed as modified in accordance with the foregoing opinion.

### DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that the trial court properly concluded that the affidavits submitted by Sean W. Moran (Moran) to rehabilitate thirty-

---

6. The trial court reviewed many affidavits and found them to constitute substantial proof of actual signatures on the petition. *See e.g.,* N.T. at 90–91, 104, 169–176 and 188–189.

7. In *Morrill v. Weaver*, 224 F.Supp.2d 882 (E.D.Pa.2002), the district court considered a constitutional challenge to Section 951(d) of the Pennsylvania Election Code, 25 P.S. § 2911(d), by Green Party candidates and activists who sought injunctive relief restraining the enforcement of Section 951(d), which requires that election nomination petition affiants be registered voters and residents of the electoral district where the candidate is running for office. The court found that requiring nominating petition affiants to be registered voters of the candidate's electoral district would impose severe burdens on the plaintiffs' constitutional freedoms of political expression and association under the First and Fourteenth Amendments and, as a consequence, that "qualified electors" who serve as nominating petition affiants are not required to be registered voters or to be residents of the district in which the candidate is running for office. This case, while relevant to nomination petition proceedings, is not binding on the Court and in any event does not alter the decision reached in the case sub judice.

three printed names on the Agenda Initiative Petition (Petition) were insufficient under *In re Nomination Petition of Flaherty*, 564 Pa. 671, 770 A.2d 327 (2001). In reaching its conclusion, the trial court believed that the affidavits did not state that the affiant's printed name was intended to be the affiant's signature. (Majority op. at 209–210.) I disagree.

Briefly, I would conclude that the trial court improperly admitted the affidavits, which constitute uncorroborated hearsay, and improperly rejected them based on the inadequacy of their content.[1] I would hold that the statements made in the affidavits *were* sufficient to rehabilitate the printed names on the Petition because each affidavit affirmed that the affiant personally "signed"[2] the Petition and that the printed name on a particular line of the Petition was to serve as the affiant's "signature."[3] (*See* R.R. at 233a.) However, because the affidavits are hearsay,[4] I also would hold that the affidavits were insufficient to rehabilitate the printed names absent corroborating evidence. Inasmuch as the trial court refused to consider whether the signatures on the voter registration cards corroborated the signatures on the affidavits, which, if believed, were sufficient to cure the defect, I would remand this case to the trial court for further proceedings.

As a preliminary matter, I point out that copies of the affidavits appear in the reproduced record, but the affidavits themselves are *not* part of the certified record. Ordinarily, this court will not consider documents as evidence if they are absent from the certified record.[5] However, because the trial court clearly "moved" the "exhibits" into evidence,[6] it appears that the affidavits' omission from the certified record was inadvertent. Because there is no motion before this court to strike any portion of the reproduced record, I conclude that it is proper for this court to consider the affidavits.

Moran's argument is that the trial court erred in concluding that thirty-three affidavits he submitted from voters who printed their names on the Petition were insufficient to rehabilitate the voters' signatures.

Where an elector has printed his or her name instead of signing it in the cursive manner as signed on the voter registration

---

1. Although the affidavits constituted uncorroborated hearsay, the trial court admitted the affidavits as competent evidence. Then, instead of considering corroborating evidence, the trial court rejected the affidavits based on their content because the trial court erroneously believed that, under *Nomination Petition of Flaherty*, a printed name cannot be a qualified elector's signature unless the printed name appears on the voter registration card as the signature. (*See* R.R. at 150a–53a.)

2. Section 908 of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2868, states that a qualified elector shall "sign" the petition. I note that the word "sign" means to "make any mark...." Black's Law Dictionary 1381 (6th ed.1990).

3. "A signature may be written by hand [or] printed.... And whatever mark, symbol, or device one may choose to employ as representative of himself is sufficient." Black's Law Dictionary 1381–82 (6th ed.1990).

4. Thus, affidavits, by themselves, do not constitute substantial proof of the truth asserted therein.

5. This court's scope of review is limited to examination of the *record* to determine whether the trial court committed errors of law or whether the trial court's findings are supported by adequate evidence. *In re Petition to Contest Primary Election of May 19, 1998*, 721 A.2d 1156 (Pa.Cmwlth.1998).

6. I question the propriety of the trial court *sua sponte* "moving" Moran's exhibits into evidence. (*See* R.R. at 219a.)

card, the defect is curable by amendment.[7] *In re Nomination Petition of Cooper*, 163 Pa.Cmwlth. 430, 643 A.2d 717 (1994). To cure the defect, there must be "substantial proof that the person intended her printed name to be her signature."[8] *Nomination Petition of Flaherty*, 564 Pa. at 681, 770 A.2d at 333. The affidavits state:

1. I have reviewed my Voter Registration Card, a copy of which is attached hereto as Exhibit A. I am the individual registered thereon.

2. I have reviewed the Agenda Initiative Petition, a copy of which is attached hereto as Exhibit B. I recognize and *affirm the **signature** at line number [ ] of the Agenda Initiative Petition* attached hereto *as being my own*, having personally signed the Agenda Initiative Petition as a registered voter of Allegheny County on the date indicated.

(*See* R.R. at 233a) (emphasis added). Certainly, this statement, which affirms that the printed name on the Petition is made by the affiant's hand, indicates that the affiant intended her printed name, or mark, to be her signature.[9] Thus, I believe the affidavits express the proper intent under *Nomination Petition of Flaherty*.

However, an *ex parte* affidavit made out of court ordinarily is not admissible to prove the facts stated in the affidavit, particularly when the affiant is alive and available to testify. *See* 8 Standard Pennsylvania Practice § 53:31 (1999). Indeed, affidavits are hearsay and, as such, they cannot support a finding of fact without corroborating evidence. *See In re Nomination Petition of Delle Donne*, 779 A.2d 1 (Pa.Cmwlth.), *aff'd*, 565 Pa. 561, 777 A.2d 412 (2001); *Dale v. Philadelphia Board of Pensions and Retirement*, 702 A.2d 1160 (Pa.Cmwlth.1997), *appeal denied*, 556 Pa. 696, 727 A.2d 1123 (1998); *see also Walker v. Unemployment Compensation Board of Review*, 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976).

7. Likewise, the use of nicknames is amendable by the presentation of evidence confirming the identity of the electors. *In re Nomination Petition of Cooper*, 163 Pa.Cmwlth. 430, 643 A.2d 717 (1994).

8. A person's signature is his or her mark for identification purposes; on its face, a signature sets one person apart from all other people. This is because a person's signature has certain identifiable characteristics which are distinguishable from those made by other people, even those purporting to pass themselves off as that person. The reason for requiring a signature in an election matter is not to disenfranchise an eligible voter but, rather, to prevent fraud. To the degree we say that a printed signature can *never* be adequate to identify a voter, we defeat that proposition.

The reason we frown on printed "signatures" is because they may be fraudulently duplicated by tracing and because they require some other evidence to corroborate that they are made by the hand of the qualified elector before they can be considered valid.

Thus, if we permitted printed signatures, which as a general rule are not self-authenticating, it would invite fraud and overburden the courts to prove otherwise. But that is not to say that merely printing one's name should defeat a person's eligibility to exercise a right pertinent to the right to vote. If an eligible elector comes before a court and states that he or she printed her name on a petition, the court should recognize that person's identity as an eligible voter.

9. I note that an elector who is unable to sign an absentee ballot due to illness or physical disability is permitted to make a mark in lieu of a signature, provided that an adult witness attests to the validity of the mark. Section 1306 of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *added by* section 11 of the Act of March 6, 1951, P.L. 3, *as amended*, 25 P.S. § 3146.6(a); *Dipietrae v. City of Philadelphia*, 666 A.2d 1132 (Pa. Cmwlth.1995), *aff'd*, 543 Pa. 591, 673 A.2d 905 (1996); *McLaughlin Appeal*, 45 Pa. D. & C.2d 333 (1968). A healthy and able-bodied elector should be no less enfranchised.

Here, the trial court refused to consider whether the signatures on the voter registration cards corroborated the signatures on the affidavits. This is because the trial court erroneously believed that the content of the affidavits was insufficient under *Nomination Petition of Flaherty*. Accordingly, I would remand this case to determine whether the signatures on the voter registration cards corroborate the signatures on the affidavits.[10]

Judge PELLEGRINI joins in this dissent.

### DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent.

In *In re Nomination of Flaherty*, 564 Pa. 671, 770 A.2d 327 (2001), our Supreme Court stated:

> [W]e find that an elector who prints her name on a nomination petition has not properly signed the petition, as required by the plain language of Section 908 of the Election Code. We believe that there is a discernible difference between a name as printed and a name as signed. A person's name as signed is perceived to be an insignia used by that person to represent herself and generally is made in a manner that is not easily traceable, as in the case of the person's printed name. Given this difference, as well as the importance of insuring the integrity of the election process, we find that in stating that a person must "sign" the nomination petition, the General Assem-

bly intended that a person make that insignia that the person uses to represent herself, rather than print her name. Therefore, *absent substantial proof that the person intended her printed name to be her signature,* a person may not validly print her name upon a nomination petition.

*Id.* at 680–681, 770 A.2d at 332–333 (emphasis added, citations omitted). I disagree with the trial court's application of *Flaherty* to this case.

Here, unlike in *Flaherty*, Moran presented the trial court with more than 60 uncontested affidavits signed by electors in support of many of the challenged signatures. The affidavits contained the individual's sworn statement that she had reviewed her voter registration card, signed the Agenda Initiative Petition on the date indicated, and affirmed her signature, specifying its line on the Petition. R.R. 233a. The trial court's Opinion does not specifically explain why these affidavits do not constitute "substantial proof."

Further, *Flaherty* arose under the Election Code, which does not apply to challenges to an Agenda Initiative Petition. Article XI of the Administrative Code of Allegheny County (Administrative Code), "Agenda Initiative and Voter Referendum,"[1] provides for the initiation procedure, petition requirements, filing procedure, and certification procedure for agenda initiative and voter referendum petitions. Article XI, Section 1101.08 of

---

**10.** If the thirty-three affidavits rehabilitate the printed names, then the Petition will have the requisite 500 signatures.

**1.** Section 1.12–1201 of the Allegheny County Home Rule Charter provides that:
The voters of the County shall have the power to propose ordinances by petition for consideration by County Council. Each proposed ordinance shall be germane to

County government and limited to one subject which shall be clearly expressed in its title. Any such petition signed by 500 voters of the County and presented to County Council shall be considered by County Council within 60 days of receipt. Procedures for agenda referendum petitions shall be established in the Administrative Code.
302 Pa.Code § 1.12–1201.

the Administrative Code deals with the certification of agenda initiative petitions. Subsection E, "Challenges to Agenda Initiative Petitions Certified as Sufficient," provides that "[t]he decision of the County Council Clerk shall be subject to appeal to the Court of Common Pleas within seven (7) days of the date of the statement of certification." ALLEGHENY COUNTY, ADMINISTRATIVE CODE art. XI, § 1101.08(E) (2000). This provision does not mention the Election Code.

In contrast, Article XI, Section 1101.09(E) of the Administrative Code, which deals with the certification of voter referendum petitions and challenges thereto, specifically references the Election Code. It states that:

Pursuant to 25 P.S. [§ ] 2937,[2] Voter Referendum Petitions certified sufficient shall be deemed to be valid, unless, within seven (7) days after the statement of certification by the Board of Elections concerning the Voter Referendum Petition, a petition is presented to the Court of Common Pleas specifically setting forth the objection thereto, and asking that the said Voter Referendum Petition be set aside. A copy of said petition shall, within said period, be served on the authorized representative of the Board of Elections with whom said petition was filed. Upon presentation of such petition, the Court shall follow the procedure set forth in 25 P.S. [§ ] 2937 regarding objections to petitions insofar as they may be applicable.

ALLEGHENY COUNTY, ADMINISTRATIVE CODE art. XI, § 1101.09(E) (2000).

The Administrative Code treats agenda initiative petitions and voter referendum petitions as separate and distinct matters. This difference is probably based upon the fact that an agenda initiative petition merely gets an ordinance before the County Council; the Council decides whether it goes on the ballot.

I disagree with the trial court's premise, *i.e.*, that it is "obvious" that the Election Code applies to a challenge to an agenda initiative petition. Opinion at 4. To the contrary, it appears obvious that the Election Code is to be followed only in a challenge to a voter referendum petition. Nevertheless, the Administrative Code does not define "signature," and it was not inappropriate for the trial court to follow *Flaherty* as precedent. However, *Flaherty* did not establish a *per se* rule that printed signatures are invalid. Accordingly, I would remand for specific findings on whether the 60 uncontested affidavits constitute substantial proof within the meaning of *Flaherty*.

**2.** Section 977 of the Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2937.